PEOPLE v SHAW

Docket No. 313786. Submitted February 10, 2016, at Detroit. Decided
June 14, 2016, at 9:00 a.m. Leave to appeal denied 500 Mich 941.
Barry D. Shaw was convicted following a jury trial in the Ingham
Circuit Court of nine counts of first-degree criminal sexual
conduct (CSC-I), MCL 750.520b; he was acquitted of one addi-
tional count of CSC-I. The court, Joyce Draganchuk, J., sentenced
defendant to 15 to 40 years' imprisonment on one count and to 18
years and 9 months to 40 years' imprisonment on the other eight
counts. Defendant filed a motion for new trial on the ground of
ineffective assistance of counsel. After a 10-day hearing, the trial
court denied the motion for new trial. Defendant appealed his
convictions and the denial of his motion for new trial.

The Court of Appeals *held*:

1. Defendant received ineffective assistance of counsel when
his attorney failed to object to hearsay testimony offered by five
different witnesses, each of whom recounted statements made to
them by the complainant, which served to bolster her credibility.
Three of the witnesses were members of the complainant's family.
Their statements were clearly hearsay, and defense counsel
conceded that he had no strategic reason for failing to object.
Therefore, his performance fell below an objective standard of
reasonableness. The other two witnesses were Dr. Stephen Guer-
tin, a pediatrician and expert witness on child sexual abuse, and
Lansing Police Department Detective Elizabeth Reust. The state-
ments to Guertin were not admissible under MRE 803(4), which
permits the admission of statements made for the purpose of
medical treatment if they were reasonably necessary for diagno-
sis and treatment and there was a self-motivation for truthful-
ness to receive proper medical care, because the complainant was
referred to Guertin in conjunction with the police investigation
and had seen a different physician in the last seven years who
was not called as a witness. Reust's testimony was filled with
statements about how she confirmed background facts reported to
her by the complainant and corroborated facts in the complaints.
There was no reason for trial counsel to have reasonably con-
cluded that he could obtain a tactical advantage by allowing the

inadmissible hearsay to uncover inconsistencies in the complainant's testimony. The trial was essentially a credibility contest, and these errors all essentially confirmed the complainant's story. Given the frequency, force, and extent of the hearsay testimony, there was a reasonable probability that the outcome of the trial would have been different but for these errors.

2. Defendant was also denied effective assistance of counsel because defense counsel failed to discover and present testimony that the complainant was sexually active with a boyfriend that she had lived with for some time beginning when she was 19 years old. Evidence that the complainant and the boyfriend engaged in consensual vaginal and anal sex would have explained Guertin's testimony about the extensive hymenal changes and chronic anal fissure. Without this testimony, the jury was left to conclude that those injuries must have resulted from defendant having abused the complainant when she was a child. The trial court erroneously concluded that the testimony would have been excluded by the rape-shield law, MCL 750.520j. Rather, the testimony could have come in as evidence of an alternative explanation for the hymenal changes and the source of the chronic anal fissure, and defense counsel's failure to ask the boyfriend about the issues fell below an objective standard of reasonableness. In light of the significance of the testimony, there was a reasonable probability that the result of the trial would have been different had the testimony been admitted.

3. The trial court erred when it admitted, over objection, hearsay testimony from Officer Kasha Osborn. The complainant's brother was asked on direct examination whether he recalled a fight between his mother and defendant that occurred when he was 12 or 13 years old. He denied memory of the incident and stated that he did not remember telling the police about it. Over defense objection, Osborn testified that the brother told her about an incident that occurred at that family's house. The brother's testimony had little, if any, probative value. The brother did not witness any of the abuse, nor did the prosecution suggest that he did. The elicited denial was simply a mechanism for introducing substantive evidence under the guise of rebutting the denial; therefore, the impeachment should have been disallowed. Although under other circumstances this may have been harmless error, given the extent of other improperly admitted evidence heard by the jury, it was difficult to single out a particular error and conclude it was harmless.

Reversed and remanded for a new trial.

Gleicher, P.J., concurring, raised the question whether Guertin, who was board-certified in pediatrics and pediatric critical care, was qualified under MRE 702 to render expert opinions based on his examination of an adult, sexually active woman, and suggested that the trial court would need to consider this question on retrial.

Jansen, J., dissenting, disagreed with the majority's substitution of its judgment for that of the trial court in determining that there had been ineffective assistance of counsel. The failure to object to the hearsay statements was a matter of trial strategy that was beneficial to defendant because it opened the door for additional testimony that the complainant was not credible or truthful. In addition, the testimony was cumulative; therefore, the result of the trial was unlikely to be different but for the admission of the cumulative testimony. Regarding Guertin's testimony, it was admissible under MRE 803(4) because the complainant expressed concern that, as the result of years of abuse, she could not have children; therefore, the statements were both for medical evaluation and forensic investigation. To the extent the challenged statements were inadmissible, trial counsel admitted that he allowed Guertin's and Reust's statements in because he intended to use them to impeach the complainant. That counsel failed to address all the inconsistencies did not render the strategy unsound, and its lack of success did not give rise to ineffective assistance of counsel. The failure to present the testimony of the complainant's boyfriend was also not ineffective assistance of counsel because the evidence presented established that the complainant had engaged in consensual sexual intercourse as an adult, rendering the boyfriend's testimony unnecessary and unduly prejudicial. Moreover, with regard to consensual anal intercourse, the boyfriend's testimony would have harmed defendant's case because it would have explained why an injury that allegedly occurred years previously had not healed. Finally, the majority conceded that the impeachment evidence may have constituted harmless error if there were no additional errors, and there were none. Judge Jansen would have affirmed.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Stuart J. Dunnings, III*, Prosecuting Attorney, and *Joseph B. Finnerty*, Appellate Division Chief, for the people.

State Appellate Defender (by *Desiree M. Ferguson*) for defendant.

Before: GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

SHAPIRO, J. In August 2011, when the complainant was 23 years old, she reported to the Lansing Police Department that defendant, her stepfather, had sexually molested her on multiple occasions between the ages of 8 and 16. Following a jury trial, defendant was convicted of nine counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, and acquitted of an additional count of CSC-I. Defendant filed a motion for new trial on the ground of ineffective assistance of counsel. After a 10-day *Ginther*[1] hearing, the trial court denied the motion for new trial. Defendant now appeals his conviction and the denial of his motion for new trial. We conclude that defendant did not receive effective assistance of counsel at trial and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. Accordingly, we reverse and remand for a new trial.

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that defense counsel was ineffective for a number of reasons. Because a *Ginther* hearing was held, the issue is preserved. See *People v Johnson*, 144 Mich App 125, 129; 373 NW2d 263 (1985). A defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

trial court's findings of fact and reviews de novo questions of law. *Id.* The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

The right to counsel guaranteed by the United States and Michigan Constitutions, US Const, Am VI; Const 1963, art 1, § 20, is the right to the effective assistance of counsel. *United States v Cronic*, 466 US 648, 654-655; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

### A. FAILURE TO OBJECT TO HEARSAY

Defendant argues that his counsel's performance fell below reasonable professional norms because, among other reasons, his attorney failed to object to hearsay testimony offered by five different witnesses, each of whom recounted statements made by the complainant in which she told them that defendant had sexually abused her years earlier. Defendant further argues that this hearsay testimony was of particular significance because it served to bolster the complainant's credibility in a case that turned on credibility.

MRE 801 defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted." Unless an exception exists, hearsay is inadmissible. MRE 802. "In a trial where the evidence essentially presents a one-on-one credibility contest between the victim and the defendant, hearsay evidence may tip the scales against the defendant, which means that the error is more harmful." *People v Gursky*, 486 Mich 596, 620-621; 786 NW2d 579 (2010).

Three of the challenged witnesses were members of the complainant's family, one was Dr. Stephen Guertin, a pediatrician, who was admitted as an expert in child sexual abuse, and the last was Lansing Police Detective Elizabeth Reust. We address each in turn.

### 1. STATEMENTS TO FAMILY MEMBERS

The prosecution called three relatives of complainant—two cousins and her sister. Her cousin Elizabeth testified that, while at their grandmother's house, while upset and crying, the complainant told her that defendant had sexually touched her. Her cousin Laura testified that, in 2011 or 2012, while on a family canoe outing, the complainant, crying and intoxicated, told her that defendant had abused her when she was younger and specifically recounted one incident. The complainant's sister, Brooke, testified that later in the canoe trip, she, the complainant, and Laura took a walk together. During the walk, Laura told Brooke that the complainant had said to her that defendant had been "molesting her ever since she was little." Brooke testified that the complainant then began to cry and recounted a specific incident in which defendant raped her in the living room while the rest of the family was out in the yard. The prosecution concedes, and we agree, that no exception to the hearsay rule applies to any of these statements, so admitting

testimony recounting them was plain error, and the failure to object constituted ineffective assistance of counsel. Given that the statements were clearly hearsay, and defense counsel conceded he had no strategic reasons for failing to object, we conclude that defense counsel's performance fell below an objective standard of reasonableness. *Frazier*, 478 Mich at 243.

### 2. TESTIMONY OF DR. GUERTIN

Dr. Guertin conducted a forensic physical examination of the complainant seven years after the last alleged instance of abuse. Without objection, he recounted in detail the complainant's statements to him about the abuse. On appeal, defendant argues that the statements were inadmissible hearsay and that counsel should have objected. The prosecution responds that such an objection would have been futile because the statements were admissible pursuant to MRE 803(4) because they were made for the purposes of medical treatment or diagnosis.

"Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011). The "rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992). An injury need not be readily apparent. *Mahone*, 294 Mich App at 215. Moreover, "[p]articularly in cases of sexual assault, in which

the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *Id.*

We agree with defendant that MRE 803(4) does not apply under the circumstances presented here. First, the examination by Guertin did not occur until seven years after the last alleged instance of abuse, thereby minimizing the likelihood that the complainant required treatment. Second, the complainant did not seek out Guertin for gynecological services. Rather, she was specifically referred to Guertin by the police in conjunction with the police investigation into the allegations of abuse by defendant.[2] And during the seven years since the last alleged incident of abuse, she had seen a different physician, who was not called as a witness, for gynecological care. Under these facts, the complainant's statements to Guertin were not admissible because they were not statements for the purposes of medical treatment. See *People v Kosters*, 175 Mich App 748, 751; 438 NW2d 651 (1989) (holding that a nurse's testimony about the victim's statements was inadmissible because the statements were not reasonably necessary to medical diagnosis and treatment). The prosecution argues, on the basis of defense counsel's testimony at the *Ginther* hearing, that allowing the admission of hearsay statements by Guertin was strategic because defense counsel hoped to point out variations of fact in the complainant's statements. However, a review of Guertin's report, which was

---

[2] Indeed, Guertin's written report was directed to the prosecutor, not to the complainant as his patient or to any other physician.

available to counsel before trial, readily reveals the absence of any significant inconsistencies; certainly none that could justify allowing a medical professional to offer extensive and highly damaging hearsay testimony. Accordingly, defense counsel's performance fell below an objective standard of reasonableness when he failed to object to Guertin's hearsay testimony. *Frazier*, 478 Mich at 243.

### 3. TESTIMONY OF DETECTIVE REUST

The primary investigating officer was Detective Reust. Her testimony also contained numerous hearsay statements for which no exceptions were applicable. First, she, like other witnesses, recounted the out-of-court statements made to her by the complainant, including detailed descriptions of the alleged abuse. And in an example of hearsay within hearsay, i.e., double hearsay, she testified to the statements of Guertin that described in detail the complainant's statements to him.

Reust also testified extensively about how she confirmed numerous background facts that the complainant reported to her. She recounted statements made by the complainant regarding other events and then testified that, before filing the charges, she was able to confirm the veracity of those statements by comparing them to out-of-court statements made to her by others, by reference to various out-of-court documents, or both. She testified that, by doing so, she "corroborated" what the complainant had said. In other words, Reust concluded that the complainant was credible and so advised the jury. For the same reasons discussed in reference to the testimony of Guertin, we hold that there was no basis for defense counsel to have reasonably concluded that he could obtain a tactical advantage by allowing

the inadmissible hearsay testimony in order to ferret out inconsistencies.[3] Accordingly, defense counsel's performance fell below an objective standard of reasonableness when he did not object to the hearsay testimony from Reust. *Frazier*, 478 Mich at 243.

### 4. EFFECT ON TRIAL

Having concluded that defense counsel's performance fell below an objective standard of reasonableness with regard to the hearsay statements by the complainant's family members, by Guertin, and by Reust, we turn now to whether, but for those errors, there is a reasonable probability that the outcome of the trial would have been different.

Given the time that had passed since the alleged abuse stopped, the lack of any witnesses to the charged crimes, and the lack of any significant circumstantial proofs, this case turned largely on the complainant's credibility. Because defense counsel did not object to the hearsay statements, the jury heard the complainant's version of events more than five times. And in the case of Guertin and Reust, the hearsay was offered with what amounted to an official stamp of approval. In closing argument, the prosecutor reminded the jury that the testimony of the complainant's reports was consistent with the testimony the complainant gave during trial. And Reust's testimony that she corroborated a large number of incidental details related to her by the complainant by consulting out-of-court sources was clearly intended to bolster the complainant's credibility through references to hearsay.

---

[3] The inconsistencies addressed by defense counsel in closing argument were very minor, such as where the complainant said defendant worked and whether, in a particular incident more than 10 years earlier, she recalled defendant was wearing traditional underwear or thong-style underwear.

Moreover, Guertin testified that, based on the complainant's medical history, he believed her allegations. He also stated that, based on the complainant's medical history, i.e., her hearsay statements, he believed that his physical findings were consistent with someone who had suffered child sexual abuse. His belief based on hearsay was critical because the medical findings themselves were ambiguous at best.[4] He testified that the hymenal "injuries" he observed upon examination of the complainant could be caused by consensual penile-vaginal intercourse and that such injuries could be seen in up to 80% of teenagers who had recurrent consensual intercourse.[5] Further, he testified that the complainant's chronic anal fissure could have been caused by consensual intercourse or by diarrhea or constipation. The minimal probative value of the physical findings supports our conclusion regarding the significant prejudicial effect of the hearsay in this case.

Given the frequency, extent, and force of the hearsay testimony, we conclude that, had defense counsel objected to its admission, there is a reasonable probability that the outcome of this case would have been different. Accordingly, defendant has satisfied both prongs of the *Strickland* test.

### B. FAILURE TO PRESENT EVIDENCE OF AN ALTERNATIVE SOURCE OF INJURY

Defendant also argues that he was denied effective assistance of counsel by defense counsel's failure to

---

[4] It is unclear on what basis Guertin, a pediatrician, could offer testimony regarding what hymenal changes would be expected in a sexually active adult woman.

[5] As noted later in this opinion, it was undisputed that before Guertin's examination, the complainant had been sexually active with her boyfriend.

discover and present testimony that the complainant was sexually active with a boyfriend with whom she had lived for some time beginning when she was 19 years old. Specifically, defendant argues that defense counsel failed to investigate and present testimony that the complainant and the boyfriend engaged in consensual vaginal and anal sex. Defendant argues that this testimony would have explained why Guertin found extensive hymenal changes and the chronic anal fissure. Without this testimony, the jury was left to conclude that those injuries must have resulted from defendant having abused the complainant when she was a child.[6]

At the *Ginther* hearing, appellate counsel called the boyfriend as a witness to testify that while a couple, he and the complainant had engaged in consensual vaginal and anal sex.[7] Defense counsel testified that although he called the boyfriend as a witness at trial, he did not ask questions about the complainant's sexual activity with him because he believed it to be barred by the rape-shield law. The trial court agreed, ruling that defense counsel's failure to present this testimony was not of consequence because it would have been barred by the rape-shield law. Both counsel and the court were mistaken.

The rape-shield law, MCL 750.520j(1), provides:

---

[6] The failure to reasonably investigate can constitute ineffective assistance of counsel. *People v Trakhtenberg*, 493 Mich 38, 52-53; 826 NW2d 136 (2012).

[7] That the boyfriend would have so testified was stated as an offer of proof by appellate counsel at the *Ginther* hearing because the trial court would not permit the boyfriend to testify at the *Ginther* hearing regarding any sexual activities with the complainant. The court stated that such testimony, even as an offer of proof, is barred by the rape-shield statute. The trial court's refusal to allow the testimony for purposes of the *Ginther* hearing was erroneous because such testimony is permitted as an offer of proof if the applicability of the rape-shield statute is at issue. See *People v Hackett*, 421 Mich 338, 350; 365 NW2d 120 (1984).

Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

The rape-shield law does not prohibit defense counsel from introducing "specific instances of sexual activity . . . to show the origin of a physical condition when evidence of that condition is offered by the prosecution to prove one of the elements of the crime charged provided the inflammatory or prejudicial nature of the rebuttal evidence does not outweigh its probative value." *People v Mikula*, 84 Mich App 108, 115; 269 NW2d 195 (1978); see also *People v Haley*, 153 Mich App 400, 405-406; 395 NW2d 60 (1986) (holding that "once the prosecution introduced medical evidence to establish penetration, evidence of alternative sources of penetration became highly relevant to material issues in dispute"). Accordingly, evidence of an alternative explanation for the hymenal changes and source for the chronic anal fissure would have been admissible under the exception to the rape-shield statute, and defense counsel's failure to ask the boyfriend about these issues fell below an objective standard of reasonableness.

It is difficult to determine, with confidence, whether the boyfriend's testimony on these matters would have had a significant effect on the trial given that he was not permitted to offer the testimony at the *Ginther*

hearing, and so there is an inadequate record. However, assuming what appellate counsel proffered was accurate, the testimony would likely have been very significant given that, without it, there was no likely explanation, other than defendant's guilt, to explain the extensive hymenal changes and the chronic anal fissure. Guertin essentially testified that the hymenal changes were consistent with those of either a sexually active adult woman or an abused child. The fact that the complainant was sexually active and living with her boyfriend at age 19, well before Guertin's examination, was therefore highly relevant. The same is true regarding the proffered testimony about consensual anal sex because the complainant testified that she had not had anal sex other than defendant's forcible penetration. Given that unchallenged testimony, it is difficult to see why the jury would have questioned the prosecution's closing argument that that "the physical findings absolutely match with what [the complainant] says happened to her . . . . That's not a coincidence. That's because it actually happened."[8]

We conclude that trial counsel's failure to present this testimony at trial constituted ineffective assistance and that there is a reasonable probability that the result of the trial would have been different had the testimony been admitted.[9]

---

[8] The prosecution argues that defense counsel's failure to present the boyfriend's testimony was harmless because Guertin stated that the complainant "had adult consensual sex" and the complainant testified that she had sexual relations with the boyfriend she was dating at the time of trial. These two brief references, however, were unlikely to provide the jury a basis to conclude that the complainant was in a sexually active relationship before Guertin's examination. Moreover, they demonstrate the prosecution's recognition that the rape-shield statute did not apply.

[9] Given our resolution of defendant's arguments pertaining to the failure to object to hearsay and the failure to investigate and present evidence regarding an alternative source for the extensive hymenal

## II. IMPEACHMENT TESTIMONY

Defendant also argues that the trial court erred when it admitted, over objection, hearsay testimony from Officer Kasha Osborn. We agree. We review a trial court's evidentiary decisions for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). We review unpreserved issues for plain error affecting defendant's substantial rights. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

The complainant's brother, who was interviewed by the police, was asked on direct examination whether he recalled a fight between his mother and defendant that occurred when he was 12 or 13; he denied memory of the incident and stated that he did not remember telling the police about it. Over a defense objection, Osborn testified that the brother told her about an incident that had occurred at the family's house when he was 12 or 13. She testified that the brother told her that defendant came downstairs in a state of partial undress acting very angry toward the complainant and saying she was "in trouble." Osborn also recounted that the brother told her that in the same incident, defendant became "heated" and grabbed the complainant's mother by the neck and threatened to kill her.

The brother's testimony had little, if any, probative value. It amounted to background evidence regarding the layout of the house, the nature of household disciplinary methods, school and bus schedules, his football practice, the existence of a swimming pool, the name of a neighbor, confirmation that defendant had a Speedo, and the fact that he learned about the allega-

---

changes and the chronic anal fissure, it is unnecessary to address defendant's remaining allegations of ineffective assistance of counsel.

tions of abuse after a canoeing trip. The brother did not witness any of the abuse, nor did the prosecution suggest that he did. At the same time, the brother did not provide exculpatory testimony, nor did the defense suggest that he did. A review of the brother's testimony leaves little doubt that the prosecution's purpose in calling him as a witness was to have him describe the incident later described by Osborn.

Immediately after the brother's testimony denying both the incident and the statement to the police, Osborn was called to testify, and as described earlier, she recounted the story that the brother allegedly told her. Defense counsel objected on the ground of hearsay. On appeal, defendant argues that admission of Osborn's testimony also violated MRE 404(b) and MRE 403.

The trial court held that the statement was not hearsay because it was a prior inconsistent statement by the brother that was being offered for impeachment purposes. "When a witness claims not to remember making a prior inconsistent statement, he may be impeached by extrinsic evidence of that statement." *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995). However, "[t]he purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement—not to prove the contents of the statement." *Id.* "Testimony of 'the impeaching witness presenting extrinsic proof should state the time, place, circumstances of the statement and the subject matter of the statement but not its content.' " *Id.* at 257 n 20, quoting 28 Graham, Federal Practice & Procedure (interim ed), § 6583, pp 191-192.

In *People v Stanaway*, 446 Mich 643, 692-693; 521 NW2d 557 (1994), the Supreme Court held that there are limitations on the use of extrinsic evidence of a

witness's prior inconsistent statements. In that case, the witness testified that he had never made any statements that implicated the defendant in sexually abusing the victim. *Id.* at 689. The prosecutor then had the investigating officer testify that the witness had told him that the defendant had once stated that he had " 'screwed a young girl' " and would be in trouble if caught. *Id.* at 690. The Court reasoned:

> The substance of the statement, purportedly used to impeach the credibility of the witness, went to the central issue of the case. Whether the witness could be believed in general was only relevant with respect to whether that specific statement was made. This evidence served the improper purpose of proving the truth of the matter asserted. MRE 801.
>
> While the prosecutor could have presented defendant's alleged admission by way of the nephew's statement, he could not have delivered it by way of the officer's testimony because the statement would be impermissible hearsay. *Likewise, a prosecutor may not use an elicited denial as a springboard for introducing substantive evidence under the guise of rebutting the denial.* Here, the prosecutor used the elicited denial as a means of introducing a highly prejudicial "admission" that otherwise would have been inadmissible hearsay. The testimony of [the officer] was that [the witness] said that [the defendant] said that he had sex with a young girl. This would have been clearly inadmissible without [the witness's] denial. It is less reliable in the face of the denial. Absent any remaining testimony from the witness for which his credibility was relevant to this case, the impeachment should have been disallowed. [*Id.* at 692-693 (citations omitted; emphasis added).]

In *People v Kilbourn*, 454 Mich 677, 682; 563 NW2d 669 (1997), this Court summarized the rule in *Stanaway*, stating, "A prosecutor cannot use a statement that directly tends to inculpate the defendant under

the guise of impeachment when there is no other
testimony from the witness for which his credibility is
relevant to the case." Further, "impeachment should be
disallowed when (1) the substance of the statement
purportedly used to impeach the credibility of the
witness is relevant to the central issue of the case, and
(2) there is no other testimony from the witness for
which his credibility was relevant to the case." *Id.* at
683.

There is nothing to suggest that the *content* of the
brother's alleged statement to Osborn was needed to
impeach his testimony that he did not make such a
statement. Moreover, there was no other testimony
from him that made his credibility relevant to the case.
As in *Stanaway*, the prosecutor improperly used "an
elicited denial as a springboard for introducing sub-
stantive evidence under the guise of rebutting the
denial," and so "[a]bsent any remaining testimony
from the witness for which his credibility was relevant
to this case, the impeachment should have been disal-
lowed." *Stanaway*, 446 Mich at 693.

The effect of this improperly admitted hearsay was
heightened by the fact that the trial court failed to
instruct the jury that Osborn's testimony was for
impeachment purposes only. In both *Stanaway* and
*Jenkins*, our Supreme Court reversed convictions in
which improper hearsay was admitted on the grounds
of impeachment despite the fact that the juries had
received proper cautionary instructions. *Id.* at 690-
692, 695; *Jenkins*, 450 Mich at 263. In *Jenkins*, the
Court stated:

> We must be mindful of the fact that prior unsworn
> statements of a witness are mere hearsay and are, as
> such, generally inadmissible as affirmative proof. The
> introduction of such testimony even where limited to

impeachment, necessarily increases the possibility that a defendant may be convicted on the basis of unsworn evidence, for despite proper instructions to the jury, it is often difficult for them to distinguish between impeachment and substantive evidence. [*Id.* at 261-262 (quotation marks and citation omitted).]

In *Stanaway*, the trial court gave two such curative instructions: one immediately after the statement was admitted and the other during the final jury instructions. *Stanaway*, 446 Mich at 690-692. In the instant case, the jury was essentially permitted to consider the hearsay testimony as substantive evidence. The failure to give such a limiting instruction was plain error, and defense counsel's failure to request it was below the standard of effective representation.

The trial court also failed to provide a prior-bad-acts limiting instruction despite the potential for prejudice in testimony that described defendant grabbing the complainant's mother by the neck and threatening to kill her. This testimony did not provide evidence of "motive, opportunity, intent, preparation, scheme, plan or system" about the charged crime, nor was there any other basis for admission under MRE 404(b). It was, however, classic "bad man" evidence that suggested defendant had a character for violence. As the Supreme Court instructed in *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994): "The evidence must be relevant to an issue other than propensity under Rule 404(b), to 'protect[] against the introduction of extrinsic act evidence when that evidence is offered *solely* to prove character.'" (citation omitted; alteration in original). "To admit evidence under MRE 404(b), the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is *not* simply evidence of the defendant's

character or relevant to his propensity to act in conformance with his character." *People v Jackson*, 498 Mich 246, 259; 869 NW2d 253 (2015) (quotation marks and citation omitted). The failure to give such a limiting instruction was plain error, and defense counsel's failure to request it was below the standard of effective representation.[10]

It can be fairly argued that in the context of an otherwise proper trial, the erroneous admission of this particular testimony might very well have been harmless error. However, given the extent to which the jury heard other improperly admitted evidence, it is difficult to single out a particular error and conclude that it was harmless.

### III. CONCLUSION

During this trial, defense counsel failed to object to the improper admission of multiple hearsay statements in which the complainant was the declarant. As conceded by the prosecution on appeal, the hearsay offered by three family members did not fall within any hearsay exception. The testimony of the police officer similarly contained inadmissible hearsay statements made by the complainant as well as double hearsay regarding what the complainant told Guertin. Further, Guertin's own testimony about the declarant's state-

---

[10] Defendant argues that one of his CSC-I convictions was supported by insufficient evidence because the complainant did not testify how old she was during the incident. However, when viewed in context, it is clear that the prosecutor's questions about the complainant's age in the seventh grade were setting the time frame for the subsequent questions about the time the complainant was allegedly abused after being grounded. Accordingly, because there is sufficient evidence to support defendant's conviction, we need not vacate defendant's conviction on this basis, see *People v Mitchell*, 301 Mich App 282, 294; 835 NW2d 615 (2013), and on retrial the prosecutor can bring this charge again.

ments was hearsay and did not fall within the exception in MRE 803(4). Finally, the officer's testimony providing corroboration of the complainant's credibility through reliance on often unidentified out-of-court statements and out-of-court documents was hearsay. In addition to failing to object to the hearsay, defense counsel also failed to discover, present, or both the admissible evidence of alternative sources of the complainant's injuries. The quantity of improperly admitted testimony was so extensive, and its content so significant, that there is a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different.

We also conclude that the trial court abused its discretion when it allowed a police officer to testify over objection to the content of a statement the complainant's brother allegedly made to the police. The testimony introduced substantive evidence under the guise of rebutting the brother's denial. Further, the content of the statement violated MRE 404(b) and MRE 403.

Reversed and remanded for a new trial. We do not retain jurisdiction.

GLEICHER, P.J., concurred with SHAPIRO, J.

GLEICHER, P.J. (*concurring*). I fully concur with the majority opinion. I write separately to broach an issue likely to arise during the new trial and not addressed by the parties.

Dr. Stephen Guertin testified as an expert witness for the prosecution based on his examination of the 23-year-old complainant. As the majority opinion states, Dr. Guertin "recounted in detail the complainant's statements to him about the [sexual] abuse." Dr. Guertin also performed gynecological and rectal ex-

aminations. At the trial he advanced two expert opinions: that the appearance of the complainant's hymen was more consistent with "child sexual assault" than with "consensual penile-vaginal intercourse" and that her chronic anal fissure "clearly could be from unconsensual sodomy."

In my view, the record does not establish Dr. Guertin's qualification under MRE 702 to render either opinion. Dr. Guertin testified that he is board certified in pediatrics and pediatric critical care. He detailed his extensive experience in examining children referred to him for evaluation of possible child abuse. But he provided no testimony whatsoever concerning his experience, education, or training in adult gynecology or rectal examination and diagnosis in adult women, if any. Whether the appearance of the complainant's hymen was entirely consistent with consensual adult sexual activity or suggested sexual abuse during childhood formed a critical issue in this case. An expert's view on this subject is certainly relevant, but under MRE 702 must also qualify as reliable. "The Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony . . . rests on a reliable foundation . . . ." *People v Kowalski*, 492 Mich 106, 149; 821 NW2d 14 (2012), quoting *Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 597; 113 S Ct 2786; 125 L Ed 2d 496 (1993) (brackets omitted).

The breadth and depth of Dr. Guertin's experience in performing pelvic examinations on adult, sexually active women should figure prominently in a new trial evaluation of his qualifications to testify as an expert on this subject. Similarly, Dr. Guertin's training, education, and experience in evaluating the rectum of an adult woman who has engaged in consensual anal sex

must be considered before he is permitted to offer expert opinions in this regard. Because the testimony of the complainant's boyfriend regarding the nature and extent of his sexual relations with the complainant will be admitted on retrial, the extent of Dr. Guertin's experience in examining sexually active adult women constitutes information integral to the court's performance of its gatekeeping function.

JANSEN, J. (*dissenting*). I respectfully dissent from the majority opinion reversing defendant's convictions and remanding for a new trial. I would affirm defendant's convictions because I believe that this Court should not substitute its judgment for that of the trial court, which made specific findings in an opinion following a *Ginther*[1] hearing and rejected defendant's alleged claims of error.

The majority discusses several bases for reversal, including (1) ineffective assistance of counsel for failure to object to hearsay testimony, (2) ineffective assistance of counsel for failure to present evidence of an alternative source of the victim's injuries, and (3) the admission of improper impeachment testimony. I disagree that any of the alleged errors in this case warrant reversal.

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

The majority concludes that trial counsel rendered ineffective assistance when he (1) failed to object to hearsay statements by members of the victim's family, Dr. Stephen Guertin, and Lansing Police Detective Elizabeth Reust and (2) failed to present evidence of an alternative source of the victim's injuries. I disagree

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

that trial counsel's conduct rises to the level of ineffec-
tive assistance of counsel.

> A defendant must meet two requirements to warrant a
> new trial because of the ineffective assistance of trial
> counsel. First, the defendant must show that counsel's
> performance fell below an objective standard of reason-
> ableness. In doing so, the defendant must overcome the
> strong presumption that counsel's assistance constituted
> sound trial strategy. Second, the defendant must show
> that, but for counsel's deficient performance, a different
> result would have been reasonably probable. [*People v
> Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012)
> (citation and quotation marks omitted).]

This Court will not evaluate defense counsel's conduct
with the benefit of hindsight. *Id.* at 716.

### A. FAILURE TO OBJECT TO HEARSAY STATEMENTS

The majority takes issue with defense counsel's
failure to object to certain hearsay statements made at
trial. MRE 802 prohibits admission of hearsay except
as provided by the Michigan Rules of Evidence. See
MRE 802. MRE 801(c) defines "hearsay" as "a state-
ment, other than the one made by the declarant while
testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted." MRE 801(a)
defines a "statement" as "(1) an oral or written asser-
tion or (2) nonverbal conduct of a person, if it is
intended by the person as an assertion."

The majority first concludes that trial counsel ren-
dered ineffective assistance when he failed to object to
testimony of the victim's family members regarding
the fact that the victim told them that defendant had
sexually abused her. I agree that the statements con-
stituted hearsay. However, as the trial court noted in
its opinion and order denying defendant's motion for a

new trial, it became clear during the trial that Brooke, the victim's sister, no longer believed the victim's claims. She testified that her relationship with the victim is strained. Furthermore, she explained that she does not have a problem letting defendant stay with her children, who were five years old and seven years old at the time of trial. Trial counsel explained during the *Ginther* hearing that he anticipated that Elizabeth and Laura, the victim's cousins, would provide neutral testimony that they heard about the assault. Therefore, I fail to see how there was a reasonable likelihood that, but for defense counsel's conduct, the result of the proceeding would have been different. Instead, it appears that the failure to object to the hearsay statements was to defendant's benefit because it opened the door for additional testimony regarding the fact that the victim was not credible, which supported defendant's theory at trial that the victim was not truthful. This testimony from the victim's own family member was extremely beneficial to defendant at trial and not otherwise admissible. Furthermore, as the trial court noted, the testimony of the witnesses was cumulative to the victim's testimony regarding the incidents, and I do not believe that there is a reasonable probability that, but for the admission of the cumulative testimony, the result of the trial would have been different. For these reasons, I do not believe that defense counsel's failure to object to the hearsay statements constituted ineffective assistance of counsel, and in fact, when viewed overall, the admission of the testimony was exceedingly beneficial to defendant.

The majority also concludes that Dr. Guertin's testimony regarding the victim's statement that defendant sexually molested her and her description of the details of the sexual activity constituted inadmissible hearsay.

The majority further holds that trial counsel's failure to object rose to the level of ineffective assistance of counsel. I agree with the majority that, to the extent that the victim sought out Dr. Guertin in relation to a police investigation of the abuse rather than for the purpose of medical treatment in relation to the abuse, her statements would not constitute statements for the purpose of medical treatment under MRE 803(4). However, Dr. Guertin also testified that the victim expressed her concern that, as a result of the years of abuse, she could not have children. Because the victim's statements were both for medical evaluation and forensic investigation on her criminal allegations, I conclude that the statements were admissible under MRE 803(4) because they can be construed as having a dual basis for admission. However, even assuming that the statements did constitute inadmissible hearsay, I believe that trial counsel's failure to object to the hearsay statements constituted reasonable trial strategy. Defense counsel explained that he permitted Dr. Guertin to testify regarding the hearsay statements because he planned to use them later in the trial to impeach the victim. Defense counsel did not end up revealing every inconsistency at trial. I do not believe that the fact that defense counsel failed to address all the inconsistencies in the testimony renders his trial strategy unsound. Additionally, the fact that defense counsel's strategy was ultimately unsuccessful does not give rise to ineffective assistance of counsel. Therefore, I conclude that defendant fails to overcome the strong presumption that defense counsel's failure to object to Dr. Guertin's testimony constituted sound trial strategy.

Lastly, the majority concludes that Detective Reust's testimony recounting the victim's out-of-court statements regarding the abuse and other events constituted inadmissible hearsay and the failure to object to admis-

sion of the testimony rose to the level of ineffective assistance. Detective Reust testified at trial that the victim informed her that defendant molested her, and she described the details of what the victim told her had occurred. Detective Reust testified that she was able to obtain some background facts from the victim for her investigation. During the *Ginther* hearing, defense counsel explained that he permitted Detective Reust to testify without objection in order to connect the crimes with the charges, and he believed that Detective Reust was the best witness to discuss the time frame for the incidents. He also believed that he could use Detective Reust's testimony to point out inconsistencies in the victim's story. As with Dr. Guertin, defense counsel did not ultimately bring to light every inconsistency between the victim's testimony and her prior statements because he wished to avoid bringing up bad facts and did not want to permit the victim to clear up the inconsistencies in her testimony. However, I do not believe that this renders defense counsel's trial strategy unsound. Furthermore, as noted in the trial court's opinion and order, "Most if not all of the 'corroborated facts' were innocuous and were testified to by other witnesses, including Yvonne Shaw, Michael Bailey, Brooke Lewis, and Betty Elliot." Therefore, there is not a reasonable probability that, but for defense counsel's failure to object, the result of the trial would have been different. Accordingly, I do not believe that defense counsel's conduct constituted ineffective assistance of counsel because his failure to object was a sound trial strategy.

### B. FAILURE TO PRESENT TESTIMONY

The majority next concludes that defense counsel rendered ineffective assistance when counsel failed to

present the testimony of the victim's former boyfriend regarding the fact that the victim and the former boyfriend had engaged in consensual vaginal and anal sexual intercourse. I agree with the trial court that defense counsel did not render ineffective assistance by failing to present evidence that the victim engaged in consensual sexual intercourse in the years following the alleged sexual abuse, but before Dr. Guertin examined her. I disagree with the majority's conclusion that there was no likely explanation for the damage to the victim's vagina and anus other than the sexual assault. Defense counsel explained during the *Ginther* hearing that he did not question the former boyfriend regarding the victim's sexual activity because he believed that the line of questioning was barred by the rape-shield law and because he believed that the testimony was unimportant in light of the fact that the victim testified that she had engaged in consensual sexual intercourse. Defense counsel then used the evidence in the record to make an argument that the vaginal and anal injuries observed by Dr. Guertin did not stem from injuries inflicted by defendant. As noted by the trial court, Dr. Guertin testified that it was possible that the injuries to the victim's vagina occurred through adult consensual sex, and Dr. Guertin further testified that the victim had engaged in adult consensual sex. There was also testimony that the victim began using birth control at the age of 17 and that the former boyfriend lived with the victim during their relationship. Defense counsel argued during his closing argument that the vaginal injuries were most likely due to adult consensual sex. I agree with the trial court that it was unnecessary for the victim's former boyfriend to testify that he had consensual sexual intercourse with the victim given that the testimony in the case established that the victim had

engaged in consensual sexual intercourse as an adult. I disagree with the majority's conclusion that Dr. Guertin's testimony that the victim had adult consensual sex was insufficient for the jury to conclude that the victim had a sexual relationship before the medical examination. Therefore, as noted by the trial court, allowing the former boyfriend to testify that he had vaginal intercourse with the victim would be "unnecessary, unduly prejudicial, and unlawful," and the probative value of the testimony would have been outweighed by its prejudicial effect. See MRE 403.

With regard to anal sexual intercourse, Dr. Guertin testified that more recent anal sexual intercourse would explain how an injury that occurred during a sexual assault years before trial would still be present at the time of the medical examination. Dr. Guertin also testified that the injury he observed on the victim's anus could still be present if the victim passed large stool, although this was less likely. Dr. Guertin was unable to state when the anal injury occurred. Therefore, testimony that the victim engaged in consensual anal sexual intercourse with her former boyfriend would have actually *harmed* defendant's case since it would have explained why an injury that occurred years before when defendant allegedly engaged in anal sexual intercourse with the victim would not have healed before the examination. The testimony would have bolstered the victim's claim that defendant engaged in anal sexual intercourse with her. Furthermore, defense counsel properly pursued the theory that the chronic anal fissure that Dr. Guertin saw on the victim came from a large volume of stool, diarrhea, constipation, or other anal sexual activity. I believe that defense counsel's strategy properly addressed the issue, and I do not believe that defense counsel's

failure to call the victim's former boyfriend as a wit-
ness constituted ineffective assistance of counsel.

## II. IMPEACHMENT TESTIMONY

The majority concludes that the trial court erred
when it admitted the testimony of Lansing Police
Officer Kasha Osborn regarding a statement that the
victim's brother made to her. I believe that, to the
extent that the trial court erred by admitting Officer
Osborn's testimony regarding the statement of the
victim's brother, the error was harmless. As the major-
ity notes, the brother's testimony had little probative
value and related only to background evidence. Even
assuming that the prosecution improperly used the
brother's denial of the statement to introduce substan-
tive evidence, I do not see how the testimony had any
bearing on the central issue in this case regarding
whether defendant sexually assaulted the victim. The
testimony involved an incident that occurred years
earlier in which defendant informed the victim that
she was in trouble and grabbed the neck of the victim's
mother while threatening to kill her. Considering that
there was ample testimony at trial that defendant
sexually assaulted the victim, I do not believe that the
admission of Officer Osborn's testimony regarding an
unrelated incident that occurred years before trial had
any effect on the outcome of trial. The majority con-
cedes that the admission of the testimony may have
constituted harmless error if there were no additional
errors in this case. Because I conclude that there were
no additional errors in this case that prejudiced defen-
dant, I conclude that, to the extent that there was an
error, the error was harmless.

The very experienced trial court judge issued a very
complete and well-thought-out 40-page opinion after

the *Ginther* hearing addressing each of defendant's allegations of error and rejecting them. For the reasons discussed earlier, I believe that the trial court correctly denied defendant's motion for a new trial. Accordingly, I would affirm.